**STATE OF MINNESOTA, DEPARTMENT OF JOBS AND TRAINING, State Services for the Blind and Visually Handicapped, Plaintiff–Appellee,**

**Dennis Groshel, Intervenor–Appellee,**

v.

**Richard W. RILEY,\* in his official capacity as United States Secretary of Education; The United States Department of Education; Veterans Affairs, United States Department of; James B. Donahoe, in his official capacity as Administrator of Veterans Canteen Service, Defendants–Appellants.**

No. 93–1120.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1993.

Decided March 11, 1994.

■

---

\* Richard W. Riley is substituted for former Secretary of Education Lamar Alexander. *See*

F.R.A.P. 43(c).

Counsel who presented argument on behalf of the appellant was Jeffrica J. Lee of Washington, D.C. The names of Stuart M. Gerson, Thomas B. Heffelfinger, William Kanter and Jeffrica Jenkins Lee of Washington, D.C., appear on the brief of the appellants.

Counsel who presented argument on behalf of appellee State of Minnesota was Steven B. Liss of St. Paul, Minnesota. The names of Humbert H. Humphrey III, Steven B. Liss and Bernard E. Johnson of St. Paul, Minnesota, appear on the brief of appellee State of Minnesota.

Counsel who presented argument on behalf of appellee Dennis Groshel was Daniel Goldstein of Baltimore, Maryland. The names of Daniel F. Goldstein, Andrew D. Freeman and Karen R. Johnson of Baltimore, Maryland, and Daniel J. Boivin of Minneapolis, Minnesota, appear on the brief of appellee Dennis Groshel.

Before FAGG, Circuit Judge, ROSS, Senior Circuit Judge, and MAGILL, Circuit Judge.

FAGG, Circuit Judge.

Following a dispute over the operation of a blind vendors' vending facility located on United States Department of Veterans Affairs (VA) property, the district court granted summary judgment in favor of the Minnesota Department of Jobs and Training, State Services for the Blind and Visually Handicapped (DJT). The district court held the VA and the Veterans' Canteen Service (col-

lectively VCS) are subject to the Randolph–Sheppard Vending Stand Act, 20 U.S.C. §§ 107–107f (1988). Thus, the district court ruled the VCS must follow the Act's permit application and approval regulations. *See* 34 C.F.R. pt. 395 (1993). The district court also held the VCS cannot charge commissions on sales from the blind vendor's vending operation. The federal defendants appeal, and we affirm.

The Randolph–Sheppard Act provides the framework for a comprehensive regulatory scheme giving blind persons licensed by state agencies priority to operate vending facilities on all federal property. 20 U.S.C. § 107(a), (b). As authorized by § 107(b), the Secretary of the Department of Education (DOE) has prescribed detailed regulations to implement the Act's provisions. *Randolph–Sheppard Vendors of America, Inc. v. Harris*, 628 F.2d 1364, 1365–66 (D.C.Cir.1980); *see* 34 C.F.R. pt. 395. Before establishing the vending facility, the state agency must submit a permit application that includes desired terms and conditions of operating the facility. 34 C.F.R. § 395.16. If the federal department that manages the property approves the application, the department issues a permit to the state agency and a blind person licensed by the state agency operates the vending facility. *Id.* §§ 395.34, .35, .7. The Act also provides that any limitation on a vending facility's operation must be approved by the Secretary of the DOE. 20 U.S.C. § 107(b).

In 1977, the VCS and the DJT negotiated an agreement allowing the DJT to furnish vending services at the VA Medical Center in St. Cloud, Minnesota. Rather than operating under a Randolph Sheppard permit, the DJT agreed to operate the vending facility under a renewable contract that required the DJT to pay the VCS sales commissions from the vending facility. Since 1985, the vending facility has been operated by Dennis Groshel. Although the DJT renewed the contract several times, when it was time to renegotiate the contract in 1986, the DJT applied for a permit to operate the facility under the Randolph–Sheppard Act. Adhering to the regulations governing permits, *see* 34 C.F.R. §§ 395.16, .34–.35, the DJT's proposed permit contained a term requiring the VCS to issue the permit for an indefinite period of time, *id.* § 395.35(b). The proposed permit also did not provide for the VCS to collect commissions based on the blind vendor's sales. The VCS denied the permit application, claiming the VCS was exempt from the Randolph–Sheppard Act and refusing to proceed under the Act's permit regulations.

The DJT filed a complaint with the Secretary of the DOE for arbitration. *See* 20 U.S.C. § 107d–1(b). An arbitration panel concluded the VCS is subject to the Randolph–Sheppard Act and must give priority to blind vendors, but held a negotiated agreement could be substituted for the permit process. Although the arbitration panel ordered the parties to negotiate, no agreement could be reached. The arbitration panel then ordered the parties to enter a five-year contract for the operation of the vending facility, subject to renegotiation. The arbitration panel also concluded the VCS could impose a seventeen percent commission on the blind vendor's gross vending sales.

On review of the arbitration panel's decision, *see id.* § 107d–2(a), the district court granted summary judgment to the DJT. The district court held the arbitrators' decision that the VCS is subject to the Randolph–Sheppard Act compels the conclusion that the VCS must confer authority to operate the St. Cloud medical center's vending facility under the Act's permit regulations. Thus, the district court held the DJT must apply for a permit that contains the terms mandated by 34 C.F.R. § 395.35, and if the VCS approves the permit, the VCS must issue the permit for an indefinite time period, subject only to the blind vendor's failure to comply with the permit's terms, *id.* § 395.-35(b). The district court also concluded that commission payments to the VCS are a limitation on the operation of a vending facility that cannot be imposed without authorization from the Secretary of the DOE. *See* 20 U.S.C. § 107(b).

 Because the Randolph–Sheppard Act's plain language provides that the Act applies to federal departments, agencies, and instrumentalities in control of any federal property, *id.* § 107(a), (b), the Act clearly

applies to the VCS. *See Friends of the Boundary Waters Wilderness v. Robertson,* 978 F.2d 1484, 1486 (8th Cir.1992) (if Congress's intent is clear, that is the end of the judicial inquiry), *cert. denied,* —— U.S. ——, 113 S.Ct. 2962, 125 L.Ed.2d 662 (1993). Although the VCS now concedes that the VCS is subject to the Act, the VCS argues that its department should be permitted to go outside the DOE's regulations and substitute a negotiated vending agreement for the permit system. We cannot agree. Having conceded that the Act applies to the VCS, it necessarily follows that the VCS must comply with the regulatory scheme for implementing blind vendor operations on VA property. Neither the Act nor the regulations permit the VCS to pick and choose which of the Act's governing regulations to follow. Thus, we agree with the district court that the VCS must comply with the Randolph–Sheppard Act's provisions, including the detailed permit system the Secretary of the DOE has chosen to implement the Act. Because the regulations require that a permit be issued for an indefinite time period, any permit issued in this case must contain this term.

■ We also agree with the district court that in prohibiting "[a]ny limitation on the ... operation of a vending facility" unless justified by the Secretary of the DOE, 20 U.S.C. § 107(b), the Randolph–Sheppard Act precludes the VCS from requiring blind vendors to pay commissions on vending sales without the Secretary's approval. Although we need not resort to other tools of statutory construction because the statute is clear, *Robertson,* 978 F.2d at 1486, the Act's legislative history and the Act's related provisions support our conclusion. When Congress amended the Act in 1974, Congress was concerned with federal agency abuses of blind vendor's operations, like forcing blind vendors to pay commissions. *See* S.Rep. No. 93–937, 93d Cong., 2d Sess. (1974). Further, neither the Randolph–Sheppard Act nor the Veterans' Canteen Service Act, 38 U.S.C. §§ 7801–7810 (Supp. IV 1992), authorizes the VCS to collect commissions from a blind vendor or the state licensing agency. Although the Randolph–Sheppard Act authorizes the state licensing agency to set aside funds from its blind vendors' operations for a limited list of purposes, the list does not include commission payments. *See* 20 U.S.C. § 107b(3).

Finally, we reject the VCS's contention that the DOE's permit system interferes with the VCS's mission to provide articles of merchandise to hospitalized veterans at reasonable prices, *see* 38 U.S.C. § 7801, and to remain self-sustaining. Essentially, the VCS contends it should exercise control over blind vendors' prices and merchandise selection and charge commissions on the vendors' sales. Because Congress's intent to apply the Randolph–Sheppard Act to the VCS is clear from the plain language of the Act, however, the VCS "must act in accordance with that intent and [we] need not defer to the [VCS]." *Arkansas AFL–CIO v. FCC,* 11 F.3d 1430, 1440 (8th Cir.1993) (en banc). Contrary to the VCS's claim, it is entirely possible for the Randolph–Sheppard Act and the Veterans' Canteen Act to co-exist in harmony. Although the Veterans' Canteen Act empowers the VCS to operate canteens on VA property, nothing in the Act authorizes the VCS to exercise this statutory control over Randolph Sheppard vendors who also operate on VA property. Because blind vendors operate vending facilities under the Randolph–Sheppard Act and the DOE regulations, the blind vendor's operation is neither a VCS canteen nor subject to the Veterans' Canteen Act and the VCS's regulations. Indeed, to allow the VCS to operate independently of the Randolph–Sheppard Act, Congress exempted the VCS's vending machines from the income share provisions of the Randolph–Sheppard Act. *See* 20 U.S.C. § 107d–3(d).

■ Although the Randolph–Sheppard Act does not give the VCS control over a blind vendor's prices and merchandise selection or permit the VCS to charge commissions on the vendor's sales, the Act does not leave the VCS at the mercy of the DJT. Under the Randolph–Sheppard Act's permit regulations, the VCS may negotiate many terms of the DJT's permit to meet the needs of its medical center patients, 34 C.F.R. § 395.-35(c)(3), and, if unsuccessful, the VCS may seek a limitation on the permit's terms from the Secretary of the DOE, 20 U.S.C.

§ 107(b). Further, the VCS may deny an unacceptable permit. *See* 34 C.F.R. § 395.-16. In addition, if the VCS justifies to the Secretary that prohibiting the VCS from charging commissions adversely affects the interests of United States under § 107(b), the Secretary may permit the VCS to charge commissions from the blind vendor.

Thus, we affirm the district court.