KENTUCKY STATE UNIVERSITY; Mary L. Smith, President of Kentucky State University; and Members of the Board of Regents of Kentucky State University, in their Official Capacity and Their Successors in Office, Appellants,

v.

KENTUCKY DEPARTMENT FOR the BLIND; Priscilla Rogers, Executive Director of the Kentucky Department for the Blind; Stephen M. Johnson, Director of the Kentucky Business Enterprises Program; and Jerry Grimes, a Licensed Vendor Under the Kentucky Business Enterprises Program, Appellees.

No. 94–CA–2883–MR.

Court of Appeals of Kentucky.

April 12, 1996.

Case Ordered Published by
Court of Appeals May 24, 1996.

Reginald L. Thomas, General Counsel, Kentucky State University, Frankfort, for Appellants.

Sue G. Simon, Office of General Counsel, Frankfort, Steven G. Bolton, Frankfort, for Appellees.

Before DYCHE, JOHNSON and JOHNSTONE, JJ.

JOHNSTONE, Judge.

Kentucky State University appeals a decision of the Franklin Circuit Court which construes KRS Chapter 163 as conferring upon the Kentucky Department for the Blind autonomy in product selection for the Randolph–Sheppard vending facility program

within the Commonwealth. The trial judge also concluded that KRS 163.470(11) includes a right of first refusal in the establishment of food service operations on state property. Although we find no error in the determination concerning product selection, we are persuaded that the decision as to right of first refusal cannot be sustained and, accordingly, that portion of the judgment of the Franklin Circuit Court must be reversed.

The parties to this appeal have a history dating back to 1983 when a vending facility operation was established on the campus of Kentucky State University under the management of appellee, Jerry Grimes. By agreement, a minimal five percent (5%) commission was levied upon the proceeds from the vending operation to be paid to the university by the vendor Grimes. In 1989, the university indicated that it intended to terminate its contract with the department and enter a contract for vending services with a private vendor. Negotiations were undertaken to preserve the department's facility resulting in an agreement to renew the contract if the monthly commissions paid to the university were substantially increased. Grimes thereafter filed an action in the Franklin Circuit Court contesting the terms of the new contract. The issues raised in that proceeding were not resolved, however, as an agreed order was entered on April 22, 1992, acknowledging the department's statutory right to operate the vending facility on the university campus and the vendor's consent to pay the university 5 percent of the net monthly profits. As part of the agreed order, the department and the university were required to execute a conformed agreement to bring it into compliance with the terms of the agreed order.

Because the parties were unable to resolve certain points of conflict and a conformed vending services agreement could not be reached, the department sought declaratory and injunctive relief from the Franklin Circuit Court. The dispute between the parties centers on 1) the university's insistence on product and supplier control, and 2) the right of the university to license a private contractor for food cart services in competition with the vending facility operation. From adverse rulings on both issues, the university prosecutes this appeal.

■ Kentucky, with the enactment of KRS 163.470(11), extended the application of the Randolph–Sheppard vending facility program to state government:

There shall be established under the authority of the department to be directed by the commissioner, a Division of Business Enterprises. This division shall manage and supervise the Vending Facilities Program and license qualified blind persons as vendors. In connection therewith, the department shall be authorized to own or lease vending equipment for the operation of vending facilities in federal, state, private, and other buildings. The set-aside charges levied shall comply with the existing federal regulations as specified in 34 CFR 395.9. One (1) or more facility placement agents shall be employed to locate and establish additional vending facilities. The Department for the Blind shall make such surveys as may be deemed necessary to determine the vending facility opportunities for blind vendors in state buildings or on other property owned, leased, or otherwise occupied by the state government and shall install vending facilities in suitable locations on such property for the use of the blind. All of the net income from vending machines which are on the same property as a vending facility shall be paid to the blind vendor of the vending facility. Whenever there exists a conflict of interest between state agencies seeking to vend merchandise on the same state property, the agencies shall negotiate a fair agreement which shall protect the interest of both from unreasonable competition. The agreement shall be submitted to the custodial authority having jurisdiction over the property for approval. Provided, however, that in all situations the blind vendor shall be permitted to vend all items of merchandise customarily sold at similar vending facilities.

KRS 163.470(11). It is undisputed that Kentucky State University falls within the purview of this legislation. The product control issue ·developed because the university, in exchange for a substantial financial consider-

ation, extended to Coca–Cola an exclusive contract to sell its drink products on the university's campus. Despite the fact that neither the department nor vendor Grimes derives any benefit from this exclusive contract, the university insists that they are obligated to purchase only Coca–Cola brand products for resale on campus and demands contractual language reserving product and supplier control to the university. Like the trial judge, we are convinced that by virtue of the Kentucky enabling legislation, and guided by federal law and regulations, authority for supervision and control of vending services operations must be deemed to reside in the state licensing agency. Despite the university's argument to the contrary, we believe this supervisory authority includes a correlative right of product control.

Perhaps due to Randolph–Sheppard's two-tiered dispute resolution system, our research disclosed a paucity of case law defining specific rights and responsibilities under the act, although several federal cases proved generally instructive. An overview of the act's essential provisions is contained in *Minnesota Department of Jobs & Training v. Riley*, 18 F.3d 606, 608 (8th Cir.1994), including this synopsis:

> The Randolph–Sheppard Act provides the framework for a comprehensive regulatory scheme giving blind persons licensed by state agencies priority to operate vending facilities on all federal property. 20 U.S.C. § 107(a), (b). As authorized by § 107(b), the Secretary of the Department of Education (DOE) has prescribed detailed regulations to implement the Act's provisions. *Randolph–Sheppard Vendors of America, Inc. v. Harris*, 628 F.2d 1364, 1365–66 (D.C.Cir.1980); *see* 34 C.F.R. pt. 395. Before establishing the vending facility, the state agency must submit a permit application that includes desired terms and conditions of operating the facility. 34 C.F.R. § 395.16. If the federal department that manages the property approves the application, the department issues a permit to the state agency and a blind person licensed by the state agency operates the vending facility. *Id.* §§ 395.34, .35, .7. *The Act also provides that any limitation on a vending facility's opera-*

> *tion must be approved by the Secretary of the DOE.* 20 U.S.C. § 107(b). (Emphasis added).

Pertinent to the matter in issue here, however, is the following analysis of an outside agency's prerogative to exert control over blind vendor's operations:

> Finally, we reject the VCS's contention that the DOE's permit system interferes with the VCS's mission to provide articles of merchandise to hospitalized veterans at reasonable prices, *see* 38 U.S.C. § 7801, and to remain self-sustaining. *Essentially, the VCS contends it should exercise control over blind vendors' prices and merchandise selection and charge commissions on the vendors' sales.* Because Congress's intent to apply the Randolph–Sheppard Act to the VCS is clear from the plain language of the Act, however, the VCS "must act in accordance with that intent and [we] need not defer to the [VCS]." *Arkansas AFL–CIO v. FCC*, 11 F.3d 1430, 1440 (8th Cir.1993) (en banc). *Contrary to the VCS's claim, it is entirely possible for the Randolph–Sheppard Act and the Veterans' Canteen Act to co-exist in harmony.* Although the Veterans' Canteen Act empowers the VCS to operate canteens on VA property, *nothing in the Act authorizes the VCS to exercise this statutory control over Randolph Sheppard vendors who also operate on VA property.* Because blind vendors operate vending facilities under the Randolph–Sheppard Act and the DOE regulations, *the blind vendor's operation is neither a VCS canteen nor subject to the Veterans' Canteen Act and the VCS's regulations.* Indeed, to allow the VCS to operate independently of the Randolph–Sheppard Act, Congress exempted the VCS's vending machines from the income share provisions of the Randolph–Sheppard Act. *See* 20 U.S.C. § 107d–3(d).

*Riley*, 18 F.3d at 609 (emphasis added).

Similarly, we conclude that acceding to the university's demands would infringe upon the department's autonomy in administering the program within the Commonwealth to the detriment of the legislation's intended benefi-

ciaries—blind vendors. Nothing in KRS 163.470(11) can be construed as diminishing the department's responsibility to "manage and supervise the Vending Facilities Program...." As noted by the trial judge, the university can cite no authority under which it might usurp the department's function in terms of product and supplier control. Nor can it point to support for the proposition that the department can voluntarily relinquish its responsibility in this area to the detriment of its vendors. The university's complaint that it will lose revenues should it be unable to fulfill its commitment under the exclusive brand contract with Coca–Cola falls short of persuading us that it can dictate the terms under which the vendor must operate. The simple expedient of good faith negotiations between the parties, including vendor Grimes, would produce a mutually-beneficial agreement all parties could live with and that is precisely what the trial court directed the parties to do as part of the 1992 agreed order. Nevertheless, we concur in the trial judge's conclusion that the university may not unilaterally restrict the blind vendor's product selection.

■ Resolution of the issue of right of first refusal for food cart services is somewhat more problematic. Again, we turn to federal case law for guidance. In *Randolph–Sheppard Vendors of America, Inc. v. Harris*, 628 F.2d 1364 (D.C.Cir.1980), blind vendors challenged regulations promulgated to implement amendments to the Randolph–Sheppard Act. In determining that the regulations were rational and within the statutory authority of the Department of Health, Education and Welfare, the Court provided this assessment:

> The plaintiffs' primary argument is that the permit system was used prior to the 1974 Amendments and was a vehicle for agency abuse. However, Congress did not proscribe the continued use of this system. Moreover, *the Amendments delegate to state licensing agencies the authority to select the location and type of blind vending facilities to be established with the approval* of the head of the department or agency in control. The power of approval authorizes HEW to continue the permit

system, and the regulation presents a prime example of a discretionary policy judgment to which we must defer. *See, e.g., Graham v. National Transportation Safety Bd.*, 530 F.2d 317, 319 (8th Cir. 1976).

> ... Apparently the plaintiffs want an unqualified priority to operate cafeterias. Yet, the bidding system allows the Secretary to determine whether the blind operator's cost is "reasonable"; and the bidding regulation provides that if the blind vendor's bid falls within a reasonable and competitive range, even if it is higher than some others, it will be given a priority. Also, a dissatisfied state agency may always file a complaint with the Secretary for arbitration of the rejection of a blind vendor's bid. 45 C.F.R. § 1369.33(b). *It would be unreasonable to require agency heads to grant unqualified priorities to blind vendors to operate cafeterias, despite the vendor's anticipated cost.* In fact such a scheme, unlike the present one, would actually exceed the authority delegated to the Secretary by the Amendments.

*Harris*, 628 F.2d at 1366–67 (emphasis added).

The university admits that after the department determines that a suitable site for vending operations exists within an agency, the agency in question cannot deny the establishment of a vending facility by a blind person. It does not follow, however, that the university may not compete in any way with the blind vendor in the area of food service. Were this not true, we can conceive of no logical purpose for the portion of KRS 163.470(11) which provides:

> Whenever there exists a conflict of interest between state agencies seeking to vend merchandise on the same state property, the agencies shall negotiate a fair agreement which shall protect the interest of both from unreasonable competition. The agreement shall be submitted to the custodial authority having jurisdiction over the property for approval. Provided, however, that in all situations the blind vendor shall be permitted to vend all items of merchandise customarily sold at similar vending facilities.

Thus, the university is required to negotiate a fair agreement to protect the blind vendor from unreasonable competition, but we find no statutory authority requiring the extension of a right of first refusal with every expansion of the university's food service line. Of course, the statute specifically authorizes vendor Grimes to expand his line to include items available on the food cart.

Accordingly, the judgment of the Franklin Circuit Court is affirmed on the issue of product and supplier selection. On the issue of right of first refusal, the judgment is reversed and remanded for entry of judgment consistent with this opinion.

All concur.